## UNITED STATES v. THOMPSON.

(District Court, D. North Dakota. September 7, 1906.)

GAME—INTERSTATE TRANSPORTATION—CONSTRUCTION OF STATUTE.

Act May 25, 1900, c. 553, § 3, 31 Stat. 188 [U. S. Comp. St. 1901 p. 3181] provides that it shall be unlawful for any person to deliver to any common carrier or for any common carrier to transport from one state or territory to another state or territory the dead bodies or parts thereof of any wild animals or birds killed in violation of the laws of the state, territory, or district in which the same were killed, "provided that nothing herein shall prevent the transportation of any dead birds or animals killed during the season when the same may be lawfully captured and the export of which is not prohibited by law in the state, territory, or district in which the same are killed." Section 4 requires all packages "containing such dead animals, birds, or parts thereof, when shipped by interstate commerce, as provided in section 1 of this act" (31 Stat. 187 [U. S. Comp. St. 1901, p. 290]) to be plainly marked, so that the name and address of the shipper and the nature of the contents may be readily ascertained on inspection of the outside of such packages, and makes the violation of such requirement a penal offense. *Held,* that the reference in such section to section 1 of the act was a clerical error, such section having no relation to the subject-matter, and section 3 being manifestly intended; that as so construed section 4 is limited in its application to the two classes of shipments enumerated in section 3: First, animals or birds killed in violation of the game laws; and, second, animals or birds killed during the open season and "the export of which is not prohibited by law"; and that an indictment would not lie under said section 4 for a failure to mark a package containing game killed during the open season but the export of which was prohibited by the law of the state where the same was killed.

On Demurrer to Indictment.

AMIDON, District Judge. A general demurrer has been interposed to the following information upon the ground that the same does not state facts sufficient to constitute a public offense:

"At the May, 1906, term of the United States District Court for the District of North Dakota in the year of our Lord one thousand nine hundred and six, leave of the court being first had and obtained, comes B. D. Townsend, Assistant Attorney for the United States for said district, and informs the court that one Charles Thompson on the 27th day of September, A. D. 1905, at the city of Devil's Lake in the county of Ramsey in said district, did then and there willfully, knowingly, and unlawfully ship and cause to be shipped and transport and cause to be transported by interstate commerce, to wit, from said city of Devil's Lake in said district and state of North Dakota to the city of St. Paul in the state of Minnesota, upon and by means of a certain line of railway known as the "Great Northern Railway Line," which said line of railway then and there extended continuously from said city of Devil's Lake to said city of St. Paul in and through said states of North Dakota and Minnesota and elsewhere, and which said line of railway then and there was being operated by the Great Northern Railway Company, which said railway company then and there was a common carrier engaged in the interstate shipment and transportation of freight and merchandise between said points last named and elsewhere upon and by means of said line of railway, a certain package commonly called a 'trunk,' which said package then and there did contain the dead bodies of certain game birds, to wit, the dead bodies of 64 ducks commonly called 'Mallard' and 'Teal' ducks, a more particular description of which ducks is to this informant unknown, which said ducks had theretofore and during the month

of September, 1905, been killed and taken in said district and state of North Dakota, and which said package was then and there by the said Charles Thompson shipped and transported and by him, the said Charles Thompson, caused to be shipped and transported by the means aforesaid out of the state of North Dakota from the city of Devil's Lake aforesaid into the state of Minnesota to the city of St. Paul aforesaid, by interstate commerce aforesaid, and which said trunk and package at all of said times and places was not plainly or clearly marked so that the name or the adress of the shipper thereof or the nature of the contents thereof could be readily or otherwise or at all ascertained on or by inspection of the outside of said package, or otherwise or at all, and upon which said trunk and package at all of said times and places there was no mark, writing, letter or character of any kind whatsoever or combination or combinations of any thereof designating the name of the shipper thereof or the address of the shipper thereof, or the nature of the contents thereof, and upon which said trunk and package at all of said times and places there was no mark, writing, letter, or character of any kind whatsoever or combination or combinations of any thereof from which, on or by inspectin of the outside of said package or otherwise, the name of the shipper thereof or the address of the shipper thereof or the nature of the contents thereof could be ascertained, and upon which said trunk and package at all of said times and places there was no mark, writing, letter or character of any kind whatsoever; and which said trunk and package at all of said times and places was securely closed and did completely conceal from view the whole of the contents thereof, to wit, the dead bodies of said ducks, and each and all thereof, contrary to the form of the act of Congress approved May 25, 1900, in such case made and provided and against the peace and dignity of the United States of America."

This information is based upon section 4 of the act of May 25, 1900, c. 553, 31 Stat. 188 [U. S. Comp. St. 1901, p. 3181] which provides:

"That all packages containing such dead animals, birds or parts thereof, when shipped by interstate commerce, as provided in section 1 of this act, shall be plainly and clearly marked, so that the name and address of the shipper and the nature of the contents may be readily ascertained on inspection of the outside of such packages."

The reference to section 1 in this section is a clerical error. Section 1 (31 Stat. 187 [U. S. Comp. St. 1901, p. 290]) is in no way related to the subject embraced in section 4. A reading of the entire statute shows clearly that Congress intended to refer to section 3. That section reads as follows:

"That it shall be unlawful for any person to deliver to any common carrier or for any common carrier to transport from one state or territory to another state or territory * * * the dead bodies or parts thereof of any wild animals or birds where such animals or birds have been killed in violation of the laws of the state, territory or district in which the same were killed: Provided, that nothing herein shall prevent the transportation of any dead birds or animals killed during the season when the same may be lawfully captured, and the export of which is not prohibited by law in the state, territory, or district in which the same are killed."

Confining section 4 to the classes enumerated in section 3, as we are required to do by its language, what does it embrace? First, the enacting part of section 3 covers the dead bodies or parts thereof of wild animals or birds killed in violation of the laws of the state in which the same are killed. An examination of the information excludes the birds in question from this class because they were killed during the open season and when by the laws of North Dakota they might properly be killed.

The second class embraced in section 3 is covered by the proviso. It relates to dead birds or animals killed during the open season, but contains the important limitation that it does not embrace such birds or animals when their export is prohibited by law in the state in which the same are killed. This limitation exempts the birds covered by the indictment from section 4 of the act in question because their export from the state of North Dakota where they were killed is by the laws of that state expressly prohibited.

It follows, therefore, as an irresistible conclusion that the ducks mentioned in the indictment do not fall within either of the classes embraced in section 3 of the act of Congress, and as section 4 of that act covers only the classes embraced in section 3, the ducks mentioned in the indictment must likewise be excluded from the provisions of section 4.

I have reached this conclusion with a good deal of reluctance. The statute in question is one of highly beneficent purpose. An examination of the debates in Congress and the report of the committee on interstate commerce of the House of Representatives which had the bill in charge shows clearly that Congress intended by the statute to require all packages when shipped by interstate commerce, which contain the dead bodies of game birds or animals, to be marked as mentioned in section 4. Two objects were thus sought to be accomplished: First, it was intended that the package should show clearly on its face the nature of its contents and where the birds or animals were killed and the place to which they were to be shipped. This was for the purpose of notifying the carrier or purchaser of these facts so that they would be apprised, on an examination of the package and a comparison of the laws of the proper state, that the package was or was not a lawful subject of interstate commerce. The second object had in view was to aid the local authorities in enforcing game regulations. The unfortunate reference, however, in section 4 to section 3 of the act imposes the limitation which I have pointed out and which was not within the actual intent of Congress, as can be learned by the debates on the bill.

In construing a criminal law we are not permitted to go beyond its language. The statute can be given a large measure of force and effect by attaching to it the limitation which its words require. A citizen is not called upon to look beyond the words of a criminal statute to learn his legal duty, and the court can only give effect to the language of the act and such implications as clearly arise from the language. A legislative intention which cannot be found by such an interpretation cannot be given effect by the courts in administering criminal law. It necessarily follows from these views that the demurrer must be sustained, and it is so ordered.